# UNITED STATES DISTRICT COURT
## MIDDLE DISTRICT OF FLORIDA
### ORLANDO DIVISION

**CAROL ANN FARNSTROM,**

   **Plaintiff,**

**v.**             **Case No:  6:17-cv-619-Orl-37DCI**

**COMMISSIONER OF SOCIAL
SECURITY,**

   **Defendant.**

---

## REPORT AND RECOMMENDATION

 Carol Ann Farnstrom (Claimant) appeals to the District Court from a final decision of the Commissioner of Social Security (the Commissioner) denying her application for disability insurance benefits (DIB).  Doc. 1; R. 1-5, 159-60.  Claimant argued that the Administrative Law Judge (the ALJ) erred by: (1) failing to fully and fairly develop the record; and (2) failing to apply the correct legal standards to the opinions of Anne-Marie Nicolas, Psy.D.  Doc. 17 at 9-14, 19-21.  For the reasons set forth below, it is **RECOMMENDED** that the Commissioner's final decision be **AFFIRMED**.

## I.  THE ALJ'S DECISION

 Claimant applied for DIB in September, 2012.  R. 159-60.  Claimant alleged a disability onset date of December 2, 2011.  *Id*.

 On May 10, 2013, Claimant filed a written request for a hearing.  R. 15.  On July 20, 2015, Claimant appeared before the ALJ for a hearing.  R. 536.  At the hearing, the ALJ informed Claimant of her right to be represented at the hearing by an attorney or non-attorney.  R. 542-43.  Claimant waived her right to representation.  *Id*.

The ALJ issued his decision on January 12, 2016.  R. 15-26.  In the decision, the ALJ found that Claimant had the following severe impairments: early degenerative disc disease of the lumbar spine, cervical strain, bipolar disorder, and anxiety.  R. 17.  The ALJ found that Claimant had a residual functional capacity (RFC) to perform less than a full range of medium work as defined by 20 C.F.R. § 404.1567(c).[1]  R. 19.  Specifically, the ALJ found as follows:

> After careful consideration of the entire record, the undersigned finds that the claimant has the residual functional capacity to perform medium work as defined in 20 CFR 404.1567(c) with limitations. The claimant can lift, carry, push, and pull 50 pounds occasionally and 25 pounds frequently. The claimant can sit for 4 hours at one time for a total of 8 hours in an 8-hour workday. The claimant can stand and walk for 4 hours at one time for a total of 8 hours in an 8-hour workday. The claimant can occasionally climb ladders and can frequently climb stairs and ramps. The claimant can frequently balance, stoop, kneel, crouch, and crawl. The claimant is unable to perform complex tasks but can perform simple and routine tasks consistent with unskilled work and can maintain concentration on such tasks for 2-hour periods with normal breaks and a lunch. The claimant must interact with the public, co-workers, and supervisors no more than occasionally.

*Id*.  The ALJ posed a hypothetical question to the vocational expert (VE) that was consistent with the foregoing RFC determination, and the VE testified that Claimant was capable of performing jobs in the national economy.  R. 597-98.  Therefore, the ALJ found that Claimant was not disabled.  R. 24-26.

## II.      STANDARD OF REVIEW

"In Social Security appeals, [the court] must determine whether the Commissioner's decision is 'supported by substantial evidence and based on proper legal standards.'"  *Winschel v. Comm'r of Soc. Sec.*, 631 F.3d 1176, 1178 (11th Cir. 2011) (citations omitted).  The Commissioner's findings of fact are conclusive if supported by substantial evidence. 42 U.S.C. §

---

[1] "Medium work involves lifting no more than 50 pounds at a time with frequent lifting or carrying of objects weighing up to 25 pounds. If someone can do medium work, we determine that he or she can also do sedentary and light work."  20 C.F.R. § 404.1567(c).

405(g).  Substantial evidence is more than a scintilla – i.e., the evidence must do more than merely create a suspicion of the existence of a fact, and must include such relevant evidence as a reasonable person would accept as adequate to support the conclusion.  *Foote v. Chater*, 67 F.3d 1553, 1560 (11th Cir. 1995) (citing *Walden v. Schweiker*, 672 F.2d 835, 838 (11th Cir. 1982) and *Richardson v. Perales*, 402 U.S. 389, 401 (1971)).  Where the Commissioner's decision is supported by substantial evidence, the district court will affirm, even if the reviewer would have reached a contrary result as finder of fact, and even if the reviewer finds that the evidence preponderates against the Commissioner's decision.  *Edwards v. Sullivan*, 937 F.2d 580, 584 n.3 (11th Cir. 1991); *Barnes v. Sullivan*, 932 F.2d 1356, 1358 (11th Cir. 1991).  The district court must view the evidence as a whole, taking into account evidence favorable as well as unfavorable to the decision.  *Foote*, 67 F.3d at 1560.  The district court "'may not decide the facts anew, reweigh the evidence, or substitute [its] judgment for that of the [Commissioner].'"  *Phillips v. Barnhart*, 357 F.3d 1232, 1240 n.8 (11th Cir. 2004) (quoting *Bloodsworth v. Heckler*, 703 F.2d 1233, 1239 (11th Cir. 1983)).

## III.   ANALYSIS

### A.  Failure to Fully and Fairly Develop the Record

The ALJ has a basic duty to develop a full and fair record.  *Graham v. Apfel*, 129 F.3d 1420, 1422 (11th Cir. 1997).[2]  This duty generally requires the ALJ to assist in gathering medical evidence, and to order a consultative examination when such an evaluation is necessary to make an informed decision.  *See* 20 C.F.R. § 416.912.  There must be a showing that the ALJ's failure

---

[2] The ALJ's basic duty rises to a "special duty" where the claimant's right to representation has not been waived and the claimant is not represented.  *See Graham*, 129 F.3d at 1422-23.  Claimant waived her right to representation.  *See* R. 15, 542-43.  Therefore, the ALJ, in this case, only had a basic duty to develop the record.

to develop the record led to evidentiary gaps in the record, which resulted in unfairness or clear prejudice, before the court will remand a case for further development of the record. *Graham*, 129 F.3d at 1423 (citing *Brown*, 44 F.3d at 934-35).

Claimant argued that the ALJ failed to fully and fairly develop the record. Doc. 17 at 9-14. Specifically, Claimant argued that the ALJ erred by failing to request Claimant's medical records from Richard D. Potts, M.D., a doctor whom Claimant began seeing approximately one month prior to the hearing and who opined that Claimant suffered from limitations more severe than those that the ALJ accounted for in the RFC. *Id*. Claimant argued that Dr. Potts' records were "extremely important" to her case, especially given the ALJ's decision to reject Dr. Potts' opinion, in part, because the opinion was "not supported by findings contained in [Dr. Potts'] own treatment records." *Id*. She argued that the ALJ did not have all of the medical records necessary to make that finding and that there was no documentation in the record of any of Claimant's visits with Dr. Potts' from prior to September 2015. *Id*.

In response, the Commissioner argued, in part, that Claimant "made no showing that Dr. Potts had additional records." *Id*. at 14-19. The undersigned agrees.

On July 20, 2015, Claimant appeared before the ALJ for a hearing. R. 536. At the hearing, the following exchange took place with regard to Dr. Potts:

Q       Who's, who's Dr. Potts?

A       He's a new doctor that I started seeing and helped me get back on medicine.

. . .

A       He's probably not in your records.

Q       Okay.

A       He's - - that, that was the form I brought today. He filled out a functional - - residual functional capacity form for me so.

Q       So where's his treatment record, though?

A       You mean as far as his records?

Q       Yeah.

A       I'd probably have to get them and submit them for you.

Q       I mean, I could order for you - -

A       Yeah.

Q       I mean, that opinion that I (PHONETIC) have not treatment records - -

A       I understand.

Q       - - so I don't have any idea what - - who said it is or what it is - -

A       Right, right, right.  I understand that.

Q       So, you know, either, either you let me have the address and name so I can
        order it.  What other medical treatment do you got that we don't have.  And,
        and spell his name.

. . .

Q       All right.  And you've been treating how long?

A       I started seeing him about a month ago.  Finally, I was able to get a doctor
        that would help me.  Parnell - -

Q       All right.  I'll try to get those records.  Since - - and you said since June 1,
        2015, would that get everything or should I go earlier?

A       Yeah, June, that would work.

. . .

Q       If I order the from April, will that make sure we get everything?

A       Yes, sir.

Q       All right.  You've, you've seen him about one month?

A       Yes, sir.

Q      All right.  Did he do any testing?

A      Not, not lab work or physical testing at all, no.  He'd looked through all my - -

Q      So - -

A      He's got all my records.

Q      No, no MRIs - -

A      No.

Q      - - no objective testing?

A      No.

Q      All right.

A      Not yet.

Q      I'll, I'll order those records.

A      Okay

. . .

ALJ:   All right.  I'm going to try to order those missing records.  When they come in, I'll send you a copy of what we get in and give you a chance to respond to that. . . .

R. 566-69, 600.  Claimant provided the ALJ with Dr. Potts' contact information at the hearing.  R. 567-68.  Claimant also provided the ALJ with the RFC form that Dr. Potts completed on July 18, 2015.  Doc. 17 at 15; R. 507-12.

On October 16, 2015, Claimant delivered medical records from Dr. Potts to the hearing office.  Doc. 17 at 12; R. 513-35.  These records included two treatment notes, one from September 2, 2015 and one from October 9, 2015.  Doc. 17 at 12; R. 513-15.  These medical records also included past medical records from other doctors dating back to 2005.  R. 516-35.

On October 15, 2015, the ALJ sent Claimant a "proffer" letter regarding Dr. Potts' RFC form.  Doc. 17 at 16; R. 305-06.  On November 24, 2015, the ALJ sent Claimant a "proffer" letter regarding the medical records that Claimant delivered on October 16, 2015.  Doc. 17 at 16; R. 307-08.  Each letter contained the following language:

> You may submit any or all of the following: written comments concerning the evidence, a written statement as to the facts and law you believe apply to the case in light of that evidence, and any additional records you wish me to consider (including a report from the treating physician).  You may also submit written questions to be sent to the author(s) of the new evidence.
>
> You may also request a supplemental hearing at which you would have the opportunity to appear, testify, produce witnesses, and submit additional evidence and written or oral statements concerning the facts and law. . . .  You may request that I issue a subpoena to require the attendance of witnesses or the submission of records. . . .  Any request that I issue a subpoena must provide . . . a statement of the important facts that the witness or document is expected to prove; and the reasons why these facts cannot be proven without issuing a subpoena.  I will issue a subpoena if reasonably necessary for the full presentation of the case.

R. 305-08.  Plaintiff did not respond to these letters.  Doc. 17 at 16.

Following the ALJ's unfavorable decision, Claimant retained counsel to represent her on her request for Appeals Council review.  Doc. 17 at 16; R. 7-11, 309-10.  Claimant did not provide the Appeals Council with any additional records from Dr. Potts.  Doc. 17 at 16.

Here, the undersigned finds that Claimant failed to show the existence of evidentiary gaps in the record that resulted in unfairness or clear prejudice.  In the parties' joint memorandum, Claimant never explicitly alleged what specific medical records from prior to September 2015 the ALJ allegedly failed to obtain and review.  Doc. 17 at 9-14.  Instead, Claimant merely alleged, without any specifics, that Dr. Potts must have possessed additional records that the ALJ did not review because (1) Claimant testified that she began seeing Dr. Potts about a month before the hearing, and (2) the record does not contain any medical records from Dr. Potts that predate the

hearing.[3] *Id.* But this general allegation is undercut by the following: (1) Claimant never asserted that she is personally aware of any medical records in Dr. Potts' possession that the ALJ failed to obtain[4]; (2) Claimant provided no specifics regarding the alleged missing medical records; (3) Claimant failed to provide the Appeals Council or the Court with copies of any of the alleged missing medical records; (4) Claimant testified that Dr. Potts only reviewed her prior medical records and did not perform a physical, lab work, an MRI, or any other objective testing prior to the hearing; (5) Claimant provided the ALJ with the RFC form that Dr. Potts completed prior to the hearing; (6) on October 16, 2015, Claimant provided the ALJ with additional medical records from Dr. Potts[5]; (7) the additional medical records that Claimant provided to the ALJ included medical records that date as far back as 2005; and (8) Claimant failed to ask the ALJ to obtain additional medical records from Dr. Potts in response to the ALJ's "proffer" letters.  Thus, the undersigned finds that Claimant has failed to show that Dr. Potts possessed additional medical records that the ALJ failed to consider

---

[3] Claimant also generally asserted that "the ALJ did not have all of Dr. Potts' records" and that "the ALJ failed to obtain up-to-date medical records which he knew existed."  Doc. 17 at 9-14. The undersigned notes that Claimant further alleged that there was a page missing from Dr. Potts' September 2, 2015 treatment note.  *Id.*

[4] Plaintiff appears to be assuming without confirmation that such records exist.  However, given Claimant's testimony that Dr. Potts looked through her prior records but did not perform any objective testing, R. 569, the undersigned finds it plausible that the RFC form is the only relevant medical record from Dr. Potts that predates the hearing.

[5] Although not dispositive, it seems somewhat unlikely that Claimant would not have requested all of Dr. Potts' medical records when she was requesting additional medical records to provide to the ALJ, especially considering the fact that the additional medical records from Dr. Potts that Claimant provided to the hearing office included past medical records that date back as far as 2005. The undersigned finds that this supports the possibility that the RFC form is the only relevant medical record from Dr. Potts that predates the hearing.

Moreover, even if Dr. Potts did possess additional medical records that the ALJ failed to consider, the undersigned finds that the alleged failure did not result in unfairness or clear prejudice. The case relied on by Claimant is distinguishable from the instant case. In *Brown v. Shalala*, 44 F.3d 931 (11th Cir. 1995), the court held that the ALJ failed to fulfil his duty to develop the record by, in part, failing to obtain up-to-date medical records from the claimant's doctor, Dr. Howard. *Id*. at 935-36. The court noted that the record did not contain reports from the claimant's last two visits with Dr. Howard, which the claimant testified took place one day before the hearing and two weeks before the hearing. *Id*. at 933-34. The court further noted that the most recent information submitted by Dr. Howard's office predated the hearing by more than six months. *Id*. at 935. There is nothing in the court's opinion to suggest that Dr. Howard's office submitted any records that postdated the hearing. *See id*. at 932-36. And although the court found that the claimant had been prejudiced under these facts, the court specifically stated the following: "We do not mean to suggest that a remand is warranted any time a claimant alleges that the ALJ has neglected to complete the record. The likelihood of unfair prejudice to a claimant *may* arise, however, where as here, the evidentiary gap involves recent medical treatment, which the claimant contends supports her allegations of disability, or the receipt of vocational services." *Id*. at 936 n.9 (emphasis added).

Unlike in *Brown*, Claimant in the instant case failed to allege any specifics with regard to when or how many times she met with Dr. Potts prior to the hearing. Also, Claimant testified that Dr. Potts did not perform any objective testing prior to the hearing. There is nothing in the *Brown* opinion to indicate that Dr. Howard had not performed objective testing on the claimant at the two visits the claimant alleged were missing from the record. *Id*. at 932-36. Finally, in *Brown*, the other medical records from Dr. Howard predated the alleged missing medical records by more than

six months.  There is nothing in the *Brown* opinion to suggest that the record included any medical records from Dr. Howard that postdated the alleged missing medical records.  *Id*.  But here, the ALJ reviewed medical records from Dr. Potts that postdated the alleged missing medical records, including a medical record dated September 2, 2015, which is only two to three months after the date of the alleged missing medical records.[6]  Although the undersigned finds it reasonable that a claimant's condition may deteriorate over the course of more than six months as may have been the case in *Brown*, it seems unlikely, given Dr. Potts' opinion that Claimant's diagnosis is not likely to change over time, R. 511, that Claimant's condition would have significantly improved in less than three months such that the alleged missing medical records would have substantially differed from the medical records that the ALJ reviewed.  Indeed, Claimant did not argue that the alleged missing medical records substantially differed from the records that the ALJ reviewed.  Nor did Claimant argue that her condition significantly changed during the three months at issue.  Thus, the undersigned finds that Claimant has not demonstrated unfairness or clear prejudice.[7]

Accordingly, it is **RECOMMENDED** that the Court reject Claimant's first assignment of error.

---

[6] The undersigned further notes that the medical records from Dr. Potts' that postdated the hearing did include objective testing, unlike the alleged missing medical records, which Claimant testified did not.

[7] To the extent Claimant was arguing that she was prejudiced because page two of the September 2, 2015 medical record is missing from the record, the undersigned is not persuaded.  Page one of the record contains Claimant's vitals, the objective testing, Dr. Potts' assessment, and what appears to be a significant portion of Dr. Potts' plan.  Claimant provided no argument as to what may have been on page two or why she believes she was prejudiced because page two was missing.  And comparing the contents of page one of the September 2, 2015 medical record to the contents of the October 9, 2015 medical record, the undersigned does not find that Claimant has demonstrated unfairness or clear prejudice as a result of the missing page.

### B.  Failure to Apply the Correct Legal Standards to the Opinions of Dr. Nicolas

At step four of the sequential evaluation process, the ALJ assesses the claimant's RFC and ability to perform past relevant work.  *Phillips*, 357 F.3d at 1238.  "The residual functional capacity is an assessment, based upon all of the relevant evidence, of a claimant's remaining ability to do work despite his impairments."  *Lewis v. Callahan*, 125 F.3d 1436, 1440 (11th Cir. 1997).  The ALJ is responsible for determining the claimant's RFC.  20 C.F.R. §§ 404.1546(c); 416.946(c).  In doing so, the ALJ must consider all relevant evidence, including, but not limited to, the medical opinions of treating, examining, and non-examining medical sources.   20 C.F.R. §§ 404.1545(a)(1), (3); 416.945(a)(1), (3); *see also Rosario v. Comm'r of Soc. Sec.*, 877 F. Supp. 2d 1254, 1265 (M.D. Fla. 2012).

The weighing of treating, examining, and non-examining physicians' opinions is an integral part of steps four and five of the sequential evaluation process.  In *Winschel v. Comm'r of Soc. Sec.*, 631 F.3d 1176 (11th Cir. 2011), the Eleventh Circuit stated that: "'Medical opinions are statements from physicians and psychologists or other acceptable medical sources that reflect judgments about the nature and severity of [the claimant's] impairment(s), including [the claimant's] symptoms, diagnosis and prognosis, what [the claimant] can still do despite impairment(s), and [the claimant's] physical or mental restrictions.'"  *Id*. at 1178-79 (quoting 20 C.F.R. § 404.1527(a)(2)) (alterations in original).  "[T]he ALJ must state with particularity the weight given to different medical opinions and the reasons therefor."  *Id.* at 1179 (citing *Sharfarz v. Bowen*, 825 F.2d 278, 279 (11th Cir. 1987)).  "In the absence of such a statement, it is impossible for a reviewing court to determine whether the ultimate decision on the merits of the claim is rational and supported by substantial evidence."  *Id*. (quoting *Cowart v. Schwieker*, 662 F.2d 731, 735 (11th Cir. 1981)).

The ALJ must consider a number of factors in determining how much weight to give each medical opinion, including: 1) whether the physician has examined the claimant; 2) the length, nature, and extent of the physician's relationship with the claimant; 3) the medical evidence and explanation supporting the physician's opinion; 4) how consistent the physician's opinion is with the record as a whole; and 5) the physician's specialization. 20 C.F.R. §§ 404.1527(c); 416.927(c). A treating physician's opinion must be given substantial or considerable weight, unless good cause is shown to the contrary. *Winschel*, 631 F.3d at 1179; *see also* 20 C.F.R. §§ 404.1527(c)(2); 416.927(c)(2) (giving controlling weight to the treating physician's opinion unless it is inconsistent with other substantial evidence). But an examining physician's opinion is not entitled to the same level of deference. *See* 20 C.F.R. § 404.1527(c); *Crawford v. Comm'r of Soc. Sec.*, 363 F.3d 1155, 1160 (11th Cir. 2004).

On March 13, 2013, Claimant presented to Dr. Nicolas for a consultative psychological examination. R. 22, 495-98. Despite only mild to moderate mental status evaluation findings,[8] Dr. Nicolas opined that Claimant's mental health symptoms "appear to be severely impacting activities of daily living, vocational performance, and interpersonal interactions." R. 496-97. Dr. Nicolas assigned Claimant a Global Assessment of Functioning (GAF) score of 55. R. 497.

---

[8] Claimant's mental status evaluation revealed, in part, the following: alert and oriented to person, place, situation, and time; no significant problems with motor functioning; rate and quality of observed speech was unremarkable, although content was somewhat tangential; adequate attention and concentration; adequate mental flexibility; able to complete simple tasks of serial calculations without errors; no significant difficulties in processing speed; adequate receptive language; adequate expressive language; adequate immediate memory; fair recent memory; adequate remote memory; adequate mental computation; limited social skills; adequate abstract reasoning; adequate judgment with respect to self-care and social problem-solving; adequate insight; average intelligence; general thought processes coherent, logical, and goal directed; appropriate thought form and content; denied suicidal or homicidal ideations; and denied experiencing hallucinations or delusions. R. 496-97.

After discussing Dr. Nicolas's medical record and opinion, the ALJ found that Dr. Nicolas's opinion was entitled to little weight.  R. 22-23.  The ALJ explained that Dr. Nicolas's opinion was internally inconsistent given Dr. Nicolas's opinion that Claimant had a GAF score of 55, which the ALJ explained is "indicative of moderate symptoms."  R. 22-23.

Claimant argued that the ALJ erred by finding that Dr. Nicolas's opinion was entitled to little weight due to Claimant's GAF score of 55.  Doc. 17 at 19-21.  Claimant argued that the "Commissioner has declined to endorse the GAF scale for 'use in the Social Security and SSI disability programs,' and has indicated that GAF scores have no 'direct correlation to the severity requirements of the mental disorder listings.'"  *Id*. at 20-21 (citing 65 Fed. Reg. 50746, 50764-65). Claimant further argued that a GAF score is only a "snapshot opinion" regarding an individual's symptoms at the time of the evaluation, and that the fact that Dr. Nicolas assigned Claimant a GAF score of 55 on the day of Claimant's evaluation does not negate Dr. Nicolas' opinion that Claimant suffered from severe limitations..  *Id*. at 21 (citing DSM-IV at 34).  Claimant did not cite any authority from the Eleventh Circuit suggesting that an ALJ may not consider a claimant's GAF score when weighing an examining physician's opinion.  *Id*. at 20-21.

The Commissioner argued that the ALJ properly considered and weighed Dr. Nicolas' opinions.  *Id*. at 21-25.  The Commissioner argued that although a claimant's GAF score may not be dispositive, the ALJ may consider the claimant's GAF score when assessing the medical opinion evidence.  *Id*. at 24-25 (citing *Gilabert v. Comm'r of Soc. Sec.*, 396 F. App'x 652, 655). The undersigned agrees.

In *Gilabert*, the ALJ rejected the claimant's treating physician's opinion, in part, because the treating physician's "RFC assessment conflicted with his frequent decisions to assign [the claimant] GAF scores that indicated only moderate psychiatric symptoms."  *Gilabert*, 396 F.

App'x 652, 655.[9]  Implicitly finding that the ALJ may consider a claimant's GAF score when assessing medical opinion evidence, the court stated that it was "undisputed that the GAF scores [the claimant's treating physician] assigned to [the claimant] indicated only moderate difficulty in functioning and were therefore inconsistent with the severe limitations that [the claimant's treating physician] outlined in his RFC assessment."  *Id.*

The undersigned is persuaded by the court's opinion in *Gilabert*, and finds that the ALJ properly considered the GAF score opined to by Dr. Nicolas when weighing Dr. Nicolas' opinion that Claimant suffered from severe limitations.  And given the inconsistencies between Dr. Nicolas' opinions regarding Claimant's GAF score and Claimant's alleged severe limitations, the undersigned finds that the ALJ's decision to assign Dr. Nicolas' opinion little weight was supported by substantial evidence.[10]  The undersigned finds Claimant's citation to the response to a comment in the Federal Register and to the Diagnostic and Statistical Manual of Mental Disorders, a manual published by the American Psychiatric Association, unpersuasive.  Neither source suggests that an ALJ may not consider a physician's opinion regarding a claimant's GAF score when weighing that physician's RFC assessment.  And Claimant did not cite to any authority within the Eleventh Circuit that stands for such a proposition.

Accordingly, it is **RECOMMENDED** that the Court reject Claimant's second assignment of error.

---

[9] In the Eleventh Circuit, unpublished decisions are not binding, but are persuasive authority.  *See* 11th Cir. R. 36-2.

[10] The undersigned further notes that unlike the physician in *Gilabert*, Dr. Nicolas was not a treating physician, and, thus, her opinion was not entitled to the same level of deference as the physician in *Gilabert*.

## IV.    CONCLUSION

For the reasons stated above, it is **RECOMMENDED** that the Court:

1.    **AFFIRM** the final decision of the Commissioner; and

2.    Direct the Clerk to enter judgment in favor of the Commissioner and against Claimant, and close the case.

## <u>NOTICE TO PARTIES</u>

A party has fourteen days from this date to file written objections to the Report and Recommendation's factual findings and legal conclusions. A party's failure to file written objections waives that party's right to challenge on appeal any unobjected-to factual finding or legal conclusion the district judge adopts from the Report and Recommendation.  *See* 11th Cir. R. 3-1.

Recommended in Orlando, Florida on March 29, 2018.

DANIEL C. IRICK
UNITES STATES MAGISTRATE JUDGE

Copies furnished to:

Presiding District Judge
Counsel of Record
Unrepresented Party
Courtroom Deputy